## CARL M. FREEMAN ASSOCIATES, INC. *v.* STATE ROADS COMMISSION OF MARYLAND

[No. 17, September Term, 1968.]

320

*Decided February 7, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, FINAN and SINGLEY, JJ.

*Ralph F. Berlow* for appellant.

*Guy J. Cicone* and *Alger Y. Barbee, Special Attorneys,* with whom were *Francis B. Burch, Attorney General* and *Joseph D. Buscher, Special Assistant Attorney General,* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

The Circuit Court for Montgomery County, over the objec-

tions of the property owner in a condemnation proceedings, admitted into evidence testimony as to the value of a 7.94 acre parcel of land being condemned, on the basis of its use as residential-agricultural property, when the contiguous land surrounding it, which together with the condemned parcel originally formed an 80 acre tract, had been rezoned by the County Council for Montgomery County [1] from residential-agricultural (R-A) to commercial-apartment use (C-P).[2] The Council had withheld any change in zoning from the 7.94 acres because it had been delineated for highway use on a proposed master plan. The action of the Council in withholding the rezoning from the condemned parcel was compelled by section 111-48f of the Montgomery County Code which provides:

> "f. Any area reclassified by a local or a sectional or District plan map amendment shall exclude and be held to exclude any portion of the area which lies in the bed of a road, street, or alley, whether existing or proposed on a plan adopted by the Commission or other duly constituted public authority."

The question before this Court is whether testimony as to the value of the condemned property based on the zoning classification R-A in which it was frozen by the operation of section 111-48f of the Montgomery County Code should have been admitted in evidence, when, but for the withheld zoning, the highest and best use of the land would have been R-20 and C-P classifications.

The record reveals that on March 3, 1964, the Montgomery County Council (Council) granted an application of the former owner of the 80 acre tract to have 21.62 acres of the tract reclassified from R-A to a C-P zone. On June 23, 1964, the Council granted a second application for the reclassification from R-A to an apartment zone (R-20) of 50.9 acres.

---

1. The County Council for Montgomery County, Maryland, sitting as a District Council for that portion of the Maryland-Washington Regional District located in Montgomery County.

2. R-A zoning would have limited the use of the 80 acre tract to 40 dwelling units, one dwelling per two acre lot, whereas R-20 zoning for the tract would permit 1095 apartment units.

The resolution of March 3, 1964, stated:

> "Application * * * is hereby granted for 21.62 acres being the amount of land remaining after withholding 1.68 acres for realignment of Georgia Avenue as shown on the Upper Northwest Branch Master Plan."

The resolution of June 23, 1964, stated:

> "Application * * * consisting of 57.08 acres * * *, is hereby granted for 50.9 acres, more or less, withholding from rezoning all the land within the proposed widenings of Georgia Avenue and Bel Pre Road, as shown on the Upper Northwest Branch Master Plan of April 26, 1961."

On July 30, 1964, the appellant entered into a contract with the zoning applicant for the purchase of the 80 acres for $2,-383,924.68. This price was obtained by placing a value of $32,-300.00 per acre on 23.30 acres included in the commercial zoning application and $28,500.00 per acre on the 57.07 acres included in the apartment application. No exception was made for the 7.94 acres from which zoning was withheld.

The tract in question was conveyed to the appellant on December 29, 1965.

On March 29, 1966, the State Roads Commission of Maryland (Commission) commenced condemnation proceedings to take the 7.94 acre tract then owned by Carl M. Freeman Associates, Inc. (appellant), located at the southeast corner of the intersection of Georgia Avenue and Bel Pre Road, Montgomery County. Georgia Avenue is a major north-south road leading into the District of Columbia, and Bel Pre Road is an arterial highway.

The appellant did not accept the Commission's offer for $185,100.00 and filed its petition to certify the taking to the Board of Property Review in accordance with Rule U27 b 1 Maryland Rules. The Board determined that the fair market value of the property was $535,134.00. The Commission noted an appeal from the award on January 24, 1967 and on February 9, 1967 filed a petition of condemnation in the circuit court. In this petition the Montgomery County Council was named

as a defendant but it chose not to file an answer or otherwise participate in the proceedings.

The 7.94 acres sought to be condemned is a strip of land 2900 feet in length along Georgia Avenue with a varying width of 30 feet to 210 feet and was the parcel withheld from reclassification from R-A by the Council when the remaining portion of the 80 acre tract was reclassified commercial-apartment.

Upon the trial of the case the property owner moved the court to instruct the Commission that in its opening statement it should not make any reference to the R-A zoning classification of the property involved, which instruction was denied. During the trial the Commission offered the testimony of expert witnesses, none of whom based their appraisal on the value of the tract as R-20 zoned property. The witness, Lebling, testified that he appraised the 7.94 acres at $12,000.00 per acre or $93,192.00 based upon the sales price of the unimproved land in the area zoned R-A. This testimony was admitted over the objections of appellant's counsel. There was also testimony by Mr. Lebling to the effect that he concluded that the Council had withheld apartment and commercial zoning from the 7.94 acre tract so as "to provide for the traffic to and from" the larger portions of the tract and that the zoning applications awarding commercial and apartment zoning to the larger portions had been conditioned upon the withholding of zoning from the 7.94 acre tract, all of which testimony was admitted over the objection of the appellant's counsel.

The Commission also called Mr. Wormcke, an expert witness, who testified that when he first appraised the property for the Commission, he placed on it a value of $370,000.00 without regard to the withheld zoning, and discounted this value by 50% as representing his opinion of the result of a negotiated figure; it was on the basis of this appraisal that the $185,000.00 was paid into court by the Commission. He further testified that he subsequently changed his evaluation and was now of the opinion that the Commission should pay no more than $12,000.00 an acre. Wormcke also stated that he used the R-A zoning classification in arriving at an evaluation of the property.

The appellant established its value of the property by way of the testimony of three real estate appraisers who, as expert

witnesses, testified that the highest and best use of the property was for apartment development (R-20), and placed a valuation ranging from $318,000.00 to $342,800.00 based on R-20 use of the land.

The lower court in its instructions to the jury in general followed the definition of "fair market value" as set forth in the Maryland Code (1967 Repl. Vol.) Art. 33A, § 6. It did however add that, "Consideration may also be given to the reasonable probability of the area acquired being rezoned within a reasonable time."

The appellant in the court below contended that a condemnation of the property based on evidence of valuation, other than that of apartment-commercial, constituted a taking of private property without just compensation.

We are aware that a discussion of the legal effect of section 111-48f of the Montgomery County Code in context with the case at bar leads into the question of whether there can be a collateral attack upon the ordinance which may appear contrary to the view expressed by this Court in *Congressional School v. State Roads Commission,* 218 Md. 236, 146 A. 2d 558 (1958). There Chief Judge Brune, speaking for the Court, stated by way of dictum, that a collateral attack on the validity of a zoning ordinance in a condemnation suit is impermissible. The facts and law as enunciated in *Congressional School,* are of sufficient import in relation to the case at bar, as to warrant a detailed comparison.

In *Congressional School* all of the land to be taken was zoned as residential. This classification had been retained approximately three years before the taking for a strip 100 feet wide measured from the center line of the existing road. Next to this strip was another strip 200 feet wide which was zoned as commercial and beyond that the remainder of the School's property was zoned as light industrial. There was evidence from one of the Commission's witnesses that the strip zoned as residential "was reserved for road widening."

The Court in *Congressional School* used language which would be most helpful to us now, except that it was by way of dictum:

"There seems to be general agreement among the au-

thorities which have considered the question that zoning cannot be used as a substitute for eminent domain proceedings so as to defeat the constitutional requirement for the payment of just compensation in the case of a taking of private property for public use by depressing values and so reducing the amount of damages to be paid. See 1 Metzenbaum, *Zoning* (2nd Ed.), pp. 74-79; 1 Orgel, *Valuation under Eminent Domain* (2nd Ed.), § 1, p. 10; 1 Yokley, *Zoning* (2nd Ed.), § 163; *Robyns v. City of Dearborn,* 341 Mich. 495, 67 N.W.2d 718; *Grand Trunk Western R.R. v. City of Detroit,* 326 Mich. 387, 40 N.W.2d 195; *State ex rel Tingley v. Gurda,* 209 Wis. 63, 243 N. W. 317; *Henle v. City of Euclid,* 97 Ohio App. 258, 125 N.E.-2d 355, appeal dismissed, 162 Ohio St. 280, 122 N.E.-2d 792. Cf. *Scholl v. Borough of Yeadon,* 148 Pa. Super 601, 26 A. 2d 135, (ordinance requiring set-backs, where the purpose was to effect a street widening more cheaply). See also *In re Gibson,* 28 Ont.L.R. 20, 11 D.L.R. 529 (1913), in which a city by-law classified certain property as residential and imposed a set-back restriction. The court there said that if the sole purpose of these restrictions was to prevent any building on the property pending its condemnation for use as a street, then the by-law should be treated as a part of the expropriation proceeding. The court went on to say that there were certain difficulties in so treating the restrictive by-law, but did not elaborate as to what they were."

However, the Court never came to grips with the validity of the zoning ordinance which impressed the 100 foot strip with a residential classification in an effort to reserve it for road widening purposes. The case was reversed and remanded for a new trial on the grounds that the court below had erred in a ruling on the admissibility of evidence unrelated to the ordinance.

The Court categorically refused to consider any argument relating to the validity of the zoning ordinance involved in *Con-*

*gressional School,* indicating that the proper procedure to have been followed would have been by way of a bill in equity seeking injunctive relief against the application of the ordinance thus making a direct, instead of a collateral, attack on its constitutionality. In this regard the Court pointed out that the zoning authority would be a necessary party to such action and thus be in a position to defend the ordinance, whereas in *Congressional School* it was not a party to the proceedings. In *Congressional School* the Court also made comment on the fact that the objectionable zoning classification had occurred three years prior to the taking and that although under the existing laws at that time, the property owner had no statutory right of appeal to either the circuit court or the Court of Appeals, proceedings in equity were available to enjoin enforcement of an action alleged to be unconstitutional. Yet, for over three years the property owner failed to take any action to challenge the imposition of the residential classification on the 100 foot strip.

We should like to point out that in the case at bar the County Council of Montgomery County was a party defendant but chose not to enter an appearance in the proceedings. In all fairness a reading of the petition and answer gives no indication that the legal effect of section 111-48f would become an issue in the case. However, the suit papers do reveal that the condemnation was for the purpose of taking property for the construction of a highway which had been reserved for highway purposes by the County Council by virtue of section 111-48f.

Also, in the case at bar, in contrast to *Congressional School,* the condemnee did not own the land at the time it was impressed with the R-A classification and did not have at that time the requisite standing to mount a direct legal attack on the validity of the ordinance.

We realize that the differences between *Congressional School* and the instant case, although slight, are none the less significant. In the case at bar we must squarely face up to the confrontation of the ordinance which has as its purpose the freezing of the zoning classification where property is to be taken for a public way *vis a vis* the constitutional right of a property owner to receive just compensation for his property.

In refusing to permit a collateral attack on the zoning ordi-

nance in *Congressional School* this Court relied heavily on *Board of Com'rs of State Inst. v. Tallahassee B. & T. Co.,* Fla. 1st Dist. Ct. of App., 100 So. 2d 67 (1958). In the *Tallahassee* case, a collateral attack was made on a zoning ordinance by which the City of Tallahassee had restricted commercial development of a large section of the downtown area of the city so that it would be available to the State of Florida in its development of the "Capitol Center." The State of Florida eventually brought condemnation proceedings to acquire the land and the question arose as to whether evidence of value should be limited to values consonant with the residential zoning classification placed on the property by the city ordinance or whether evidence could be received of value based on use potential for limited business purposes. At the time that *Congressional School* was decided, the Tallahassee case had been heard by the District Court of Appeals of Florida, an intermediate court, on a writ of certiorari, which remanded the case to the circuit court on the basis that the issue on which the appeal was taken was interlocutory in nature. However, the District Court did state that the circuit court was correct in its ruling that there should not be a collateral attack on the city ordinance, and that the circuit court was still permitting a collateral attack on the ordinance when it permitted the property owner to change the name of his pleading from "answer" to "counterclaim", requesting a declaratory judgment regarding the legal effect of the ordinance in question.

On remand, at a pretrial hearing, the trial judge ruled that the property owners were entitled to offer evidence to establish the value of the property taken unimpaired and unrestricted by the zoning ordinances of the City of Tallahassee. A review of this order was sought before the District Court which declined to do so, *Board of Com'rs of State Inst. v. Tallahassee B. & T. Co.,* Fla. App. 101 So. 2d 411 (1958). The State of Florida also sought review before the Supreme Court of Florida which denied certiorari, *Board of Com'rs of State Inst. v. Tallahassee B. & T. Co.,* 101 So. 2d 817 (1958). The District Court again reviewed the case in 108 So. 2d 74 (1959), with the finding that the appeal was no longer being taken from rulings which were purely interlocutory, the Court stating:

"One of appellant's prime points is that the filing of a condemnation suit ipso facto exclusively precludes any attack by a landowner upon the validity of zoning regulations. We do not find that the decisions relied upon support such a comprehensive rule. Appellant refers us to *City of Miami Beach v. Hogan,* Fla. 1953, 63 So. 2d 493, and the companion of *City of Miami Beach v. Elsalto Real Estate, Inc.,* Fla. 1953, 63 So. 2d 495. We also had a similar situation in *Rott v. City of Miami Beach,* Fla. 1957, 94 So. 2d 168. * * * The mere fact that the attack on the validity of the ordinance as applied to particular land being condemned is not made until after eminent domain proceedings are instituted does not in our judgment automatically bar the assault on the effect of the ordinance as a restriction on use value in the eminent domain suit. * * *.'

"It appears to us that it would be totally unjustifiable to hold that the condemning authority could rely on the restrictive provisions of a zoning ordinance to depress land values and in the same litigation deny to the property owner an opportunity to defend himself and his property against the asserted ordinance on the ground of its alleged invalidity. * * *.

"Another major point assigned for reversal is the contention that the procedure followed by the trial judge made possible an unauthorized collateral attack on the municipal zoning ordinance. Here again appellant would seek to gain the advantage of the restrictive provisions of the zoning ordinance but deny to the property owners the right to question the validity of the ordinance for such purposes in a condemnation suit. * * *.'

"* * * The net result of the attack upon the zoning ordinance which produced the ruling of the trial judge now under assault simply was that, as applied to the particular property, the zoning ordinance unreasonably restricted evidence of value by limiting the use of the land to so-called residential developments,

whereas, the land logically and reasonably had a more valuable use potential for limited business purposes." *Id.* at 81-82.

On November 13, 1959, the Supreme Court of Florida granted a writ of certiorari in the *Tallahassee* case but after a hearing quashed the writ and the intermediate court's opinion which refused to limit the testimony as to value to the frozen zoning classification, stands undisturbed.

What we are concerned with in this case, as was the Court in *Tallahassee*, is the application of restrictions (section 111-48f and the resolutions of the Council passed pursuant thereto) to the particular property here involved, as a limitation on evidence as to value. If section 111-48f had other legitimate purposes, we might solve the matter on a purely evidentiary basis and withhold the application of the ordinance insofar as its affecting the valuation of property is concerned. To a degree this is done everytime a court permits evidence of market value based upon the reasonable probability of a change in zoning classification within the foreseeable future. *State Roads Comm. v. Warriner,* 211 Md. 480, 120 A. 2d 248 (1957).

However, in the case at bar, we fail to see wherein section 111-48f has any other purpose than its use as a device to freeze the value of land to be acquired for a public purpose.

However, in a case where the direct and sole purpose of the ordinance is to depress property values, as is the situation in this case, we must weigh the public purpose sought to be advanced and the means taken to achieve it, in light of the constitutional right of the property owner to receive just compensation for his property taken by eminent domain. In such a situation the Walls of Jericho must fall and the property owner be permitted to defend himself against the ordinance. The ordinance is directly involved and is directly impinging upon one of his constitutional guarantees. The property owner must be protected from prejudicial evidence as to value based on restrictions on the use of his property unconstitutionally impressed as part of a design to freeze or depress its value. To hold otherwise is to deprive him of the opportunity to receive just compensation for his property guaranteed by section 40 of

Article III of the Constitution of Maryland. For the reasons which we have just related, we think that section 111-48f of the Montgomery County Code and the resolutions affecting this case passed in pursuance of the ordinance are unconstitutional and of no legal effect. Accordingly, it was error for the lower court to admit into evidence testimony as to the market value of the property based on R-A zoning as the highest and best use of the property.

We recognize, as did Chief Judge Brune in *Congressional School,* the close relationship that necessarily must exist between planning and zoning and we commend governmental agencies and political subdivisions in their efforts to correlate their work in this area. However, we think it significant that Article 66B (1967 Repl. Vol.) of the Maryland Code entitled "Zoning and Planning," which while providing in sections 31 and 32 for the reservation of the land for proposed streets and highways for future public acquisition, seeks to implement this objective by controlling the issuance of building permits in the bed of the dedicated street or highway and makes no mention of reserving a proposed street bed through the expedient of zoning. Indeed, in the instant case, as we have stated, one cannot escape the fact that the withholding of the zoning classification given the surrounding property, from the specific area designated for street widening, was solely to depress or freeze in *status quo* the value of the land forming the street bed. One may see the reason for controlling the issuance of building permits in the area to be used in the reasonably foreseeable future for street or highway purposes, so that additional costs, not affecting the value of the land itself, will not be incurred. However, the control of the issuance of building permits does not have the effect of denying to the property owner the right to introduce into evidence testimony as to the value of the land based on its highest and best use within the framework of the zoning classification of the property of which the street bed is a part. Furthermore, we should like to point out that section 31 of Article 66B does not give a political subdivision the right to indefinitely impress property with the designation of a bed of a street or highway, as it employs the following language:

"Sec. 35. * * * In the resolution of adoption of a

plat Council shall fix the period of time for which the street location shown upon the plat shall be deemed reserved for future taking or acquisition of public use. * * *."

In view of what we have stated in this opinion, we do not think that evidence as to the market value of the condemned property, based on the R-A zoning classification frozen by ordinance, should have been admitted over the objections of the property owner. A verdict which may have been predicated on such evidence of value would constitute a taking of the property without just compensation in violation of Section 40 of Article III of the Maryland Constitution.

*Judgment reversed with costs and case remanded for a new trial.*