**W.J.F. REALTY CORP. and Reed Rubin, Plaintiffs,**

v.

The **TOWN OF SOUTHAMPTON, The Town Board of the Town of Southampton, and the Planning Board of the Town of Southampton, Defendants.**

No. CV–00–6071 (TCP)(MLO).

United States District Court, E.D. New York.

Aug. 2, 2004.

William W. Esseks, Esseks, Hefter & Angel, Riverhead, NY, for Plaintiffs.

Frederick Eisenbud, Esq., Law Office of Frederick Eisenbud, Commack, NY, for Defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Before this Court is a motion for summary judgment pursuant to Fed.R.Civ. P.56(c), brought by the Town of Southampton ("Town"), the Town Board of the Town of Southampton ("Board"), and the Southampton Planning Board ("Planning Board"), (collectively "Defendants").

For the following reasons, Defendants' motion is **DENIED**.

### A. BACKGROUND

While familiarity with the background information in this matter is assumed (*see W.J.F Realty Corp. v. Town of Southampton,* 220 F.Supp.2d 140, 142 (E.D.N.Y. 2002) (Platt, J.)), a few key points are revisited:

W.J.F. Realty Corporation and Reed Rubin ("Plaintiffs") bring this action pursuant to 42 U.S.C.1983 and 28 U.S.C. 1343(a)(3) for the alleged temporary and/or permanent taking of their private property for public use without just compensation in violation of the Fifth and Fourteenth Amendments of the United States Constitution. (Compl.¶¶ 1–2) The alleged taking dates back to March 5, 1987, when the Town placed an "administrative hold" on Plaintiffs' subdivision application, which lasted two years. (Compl.¶¶ 24, 38–47) This was followed by several successive, open-ended legislative moratoria lasting an additional six years and three months. (Compl.¶¶ 24, 48–72)

The moratoria continued until June 30, 1995, when, by Resolution No. 871 of 1995, the Town Board declared the GEIS study complete and resumed the approval process for development plans. (Compl.¶ 79) (Ans.¶ 200) Shortly thereafter, on September 7, 1995, the Planning Board approved Plaintiffs' subdivision application. (Defs. Mem. of Law at 22). Plaintiffs maintain, however, that the resumption, on or about June 30, 1995, of the Planning Board's approval process for development plans submitted by Plaintiffs was "illusory" since three days earlier the Town Board had adopted a plan prepared by the Central Pine Barrens Joint Policy and Planning Commission pursuant to the New York State Long Island Pine Barrens Protection Act of 1993, which allegedly "imposed a permanent development moratorium upon Plaintiffs' property." (Compl.¶ 80) Thus, the approval, on September 7, 1995, of their subdivision application was "meaningless." (Pls. Mem. of Law at 25, n16).

The apparent purpose of the initial administrative hold and subsequent moratoria was to undertake an environmental study of the "western portion" of the Town of Southampton, which included Plaintiffs' 272–acre property. (Compl.¶¶ 48–52) Plaintiffs allege, however, that Defendants' true purpose for preventing the development of the land was to facilitate a governmental acquisition thereof, by maintaining or reducing its value and acquisition cost. (Compl.¶¶ 1, 29–47) Plaintiffs allege that they applied for, and were denied, an exemption from the moratorium on April, 20 1993. (Compl.¶¶ 75–77)

Plaintiffs currently assert five claims for relief: (1) temporary taking resulting from an allegedly improper administrative hold imposed on March 5, 1987 (Compl.¶¶ 38–47); (2) temporary taking resulting from the first resolution/moratorium adopted by the Town on March 28, 1989 while various Generic Environmental Impact Statements were being prepared ("GEIS I") (Compl.¶¶ 48–58); (3) a temporary taking resulting from the adoption by the Town of Local Law No. 25–1990 on October 23, 1990, which served to codify and continue the GEIS I resolution and provide for an administrative exemption procedure previously unavailable ("GEIS II") (Compl.¶¶ 59–69, 73) (Defs. Mem. of Law at 1); (4) a temporary taking arising out of the adoption by the Town of Local Law No. 1 of 1992 on February 11, 1992, which renamed the Town Code designation for the codified GEIS study from Chapter 300 to Chapter 324 ("GEIS III") (Compl.¶¶ 70–72) (Defs. Mem. of Law at 1); and (5) temporary and permanent taking resulting

from Defendants' combined actions and regulations. (Compl.¶¶ 152–166)

It is against this backdrop of facts and allegations that Defendants' motion for summary judgment is reviewed.

## B. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the court determines that there is "no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). In such instances, " 'the moving party is entitled to judgment as a matter of law.' " *Jamaica Ash & Rubbish Removal Co. v. Ferguson*, 85 F.Supp.2d 174, 180 (E.D.N.Y.2000) (quoting *In re Blackwood Assocs., L.P.*, 153 F.3d 61, 67 (2d Cir.1998) and citing Fed.R.Civ.P. 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). District courts are required to resolve all ambiguities and draw all reasonable inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 137 (2d Cir.1998). Notably, any "credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *Curry v. City of Syracuse*, 316 F.3d 324, 329 (2d Cir.2003).

## C. DISCUSSION

Defendants seek summary judgment with respect to each of Plaintiffs' five claims, advancing three theories in support of their motion: (1) the Plaintiffs' claims are not ripe, (2) the statute of limitations has run, and (3) the claims fail on the merits. Each claim is addressed in turn with Defendants' asserted arguments and

the standard of summary judgment in mind:

### 1. Defendants' Claims: Ripeness and Statute of Limitations

#### a. Plaintiffs' First Claim: Temporary Taking Resulting from Improper Administrative Hold

##### (I) Ripeness

■ As the Second Circuit recently explained, the Supreme Court, in *Williamson County v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), "established a two-pronged test for determining whether a Fifth Amendment takings claim is ripe:" the first requires a "final decision" from the government entity charged with enforcing the regulations and the second requires the plaintiff to have sought compensation through procedures provided by the State. *Santini v. Connecticut Hazardous Waste Mgmt. Svc.*, 342 F.3d 118, 124 (2d Cir.2003).

Defendants put forth three arguments challenging the ripeness of Plaintiffs' first claim. First, Defendants argue that Plaintiffs' have failed to satisfy the "final decision" prong of *Williamson County* because they did not challenge the "hold" placed on their property from 1987 to 1989. (Defs. Mem. of Law at 5) Second, Defendants argue that the second prong of *Williamson County* has not been satisfied. (*Id.* at 9) Finally, Defendants argue that due to the Planning Board's ultimate approval of the subdivision on September 7, 1995, the Plaintiffs' claim "can never ripen." (*Id.* at 8–9)

■ First, Defendants argue that the "final decision" prong of *Williamson County* has not been satisfied because Plaintiffs could have simply asked the Planning Board to render a determination on their application. (*Id.* at 5) The record establishes, however, that Plaintiffs did in-

deed ask the Planning Board for a decision but their request was "ignored for two years," raising a disputed issue of fact. (Pls. Mem. of Law at 27–28, n18) Additionally, whether "all [Plaintiffs] had to do was ask" in order to have the hold examined and possibly suspended, raises yet another disputed issue of fact, rendering summary judgment unavailable. (Defs. Mem. of Law at 5); *See Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. 2505; *Castle Rock*, 150 F.3d at 137.

Secondly, Defendants argue that the second prong of *Williamson County* is not satisfied since Plaintiffs never sought a determination in State court that the alleged administrative hold constituted a taking without compensation. (Defs. Mem. of Law at 9) This is flatly denied by Plaintiffs and appears to be directly contradicted by the State court's ruling wherein Plaintiffs initially won a damage and interest award for the constitutional violations resulting from the 1987 to 1989 hold. (Pls. Supp. 56.1 Stmt., ¶ 74) (*See* Order of 12/5/97 at 13) Thus, having first sought compensation in State court, the second prong of *Williamson County* is satisfied.

Finally, Defendants maintain that Plaintiffs' first claim "can never ripen" as a result of the Planning Board's ultimate approval of the subdivision on September 7, 1995. (Defs. Mem. of Law at 8–9) Defendants appear to argue that because Plaintiffs' development plan was ultimately not denied, but merely delayed, "only an extraordinary delay in the approval process can give rise to a compensable taking." (*Id.* at 22) (citing *Boise Cascade Corp. v. United States*, 296 F.3d 1339 (Fed.Cir., 2002)) Defendants also seem to suggest that the eventual approval of Plaintiffs' development plans does not constitute a final decision and, therefore, Plaintiffs fail to satisfy the first *William-son County* prong. (Defs. Mem. of Law at 22) Neither argument, however, supports a determination that the claims are suitable for summary judgment.

Defendants' first argument necessarily raises a genuine issue as to a material fact: whether the eight year delay might be considered "extraordinary." Such a weighing of evidence and circumstances is not a matter for the court on a motion for summary judgment. *See Curry*, 316 F.3d at 329. In any event, as noted *supra*, the Plaintiffs argue that the 1995 approval of their subdivision application was "meaningless" because of the State law moratorium now in effect pursuant to the Pine Barrens Act. (Pl. Mem. of Law at 25, n16)

Defendants' second argument likewise fails. The takings for which the Plaintiffs seek compensation span the eight-year period between 1987 and 1995, during which their property was subject to continuous holds/moratoria. The Defendants' ultimate approval of Plaintiffs' subdivision plan on September 7, 1995 does not somehow show the absence of a final decision. On the contrary, under *Santini,* the 1995 approval is itself a final decision, ripening all of the Plaintiffs' takings claims against the Defendants' holds, moratoria and denials over the preceding eight years. *Santini*, 342 F.3d 118, 125–6 ("the first prong of *Williamson County* requires only that the government entity have rendered a final decision ... [o]nce it does so, a takings claim based on an earlier step of the regulatory process is ripe ..."). Accordingly, Plaintiffs' claims can be said to have ripened *because of* the September 7, 1995 approval.

In sum, Defendants' arguments challenging the ripeness of Plaintiffs' first claim either fail or would require the resolution of genuine issues as to material facts. Defendants are therefore not enti-

tled to summary judgment under a ripeness argument.

### (ii) *Statute of Limitations*

Defendants argue that under 1983, the three-year statute of limitations begins to run when "the plaintiff knows or has reason to know of the injury which is the basis of his action." (Defs. Mem. of Law at 6) (citing *Veal v. Geraci,* 23 F.3d 722, 724 (2d Cir.1994)) The Plaintiffs' injuries occurred on March 5, 1987 when the "administrative hold" was put into place, and as the Plaintiffs failed to file this lawsuit within three years of that injury, the statute of limitations has expired.

■ However, logic and the second prong of the *Williamson County* test indicate otherwise in the context of a federal takings claim. Indeed, the statute of limitations cannot be said to begin to run on the date an administrative hold is imposed, because under *Williamson County,* a federal takings claim is not ripe until a plaintiff has both received a final decision and sought compensation. As the Eleventh Circuit explained, the *Williamson County* ripeness test necessarily means that the statute of limitations begins to run only *after* both ripeness requirements are met:

> The determination of the accrual date of a federal regulatory takings claim depends on the occurrence of two events. First, state judicial authorities must make a final determination on the status of the subject property affected by the zoning ordinance ... Second, the property owner must be denied an adequate postdeprivation remedy ... For statute of limitations purposes, both events are necessary for the accrual of a property owner's takings claim.

*New Port Largo, Inc. v. Monroe County,* 985 F.2d 1488, 1493 (11th Cir.) (1993) (internal citations and quotations omitted).

Similarly, the Ninth Circuit, in *Levald, Inc. v. City of Palm Desert,* 998 F.2d 680, 687 (9th Cir.1993), *cert denied,* 510 U.S. 1093, 114 S.Ct. 924, 127 L.Ed.2d 217 (1994), stated:

> [T]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. So long as the state provides an adequate process for obtaining compensation, no constitutional violation can occur until just compensation is denied ... Thus, a plaintiff cannot bring a section 1983 action in federal court until the state denies just compensation. A claim under section 1983 is not ripe—*and a cause of action under section 1983 does not accrue—until that point.*

*Id.* at 687 (internal citations and quotations omitted) (emphasis added).

■ Here, the final decision from the New York courts denying the Plaintiffs' compensation was rendered by the New York Court of Appeals (in its denial of the Plaintiffs' motion for leave to appeal) on December 2, 1999. *See W.J.F. Realty Corp. v. Town of Southampton,* 94 N.Y.2d 756, 724 N.E.2d 378, 702 N.Y.S.2d 586 (Dec. 2, 1999). Since the Plaintiffs filed the instant lawsuit in this Court on October 10, 2000, this action is well within three years from the date of the State court's denial of compensation as per *Williamson County.*

Accordingly, Defendants are not entitled to summary judgment with respect to Plaintiffs' first claim under a statute of limitations argument.

### b. *Plaintiffs' Second Claim: Temporary Taking Resulting from GEIS I Moratorium*

#### (I) *Ripeness*

Defendants assert that Plaintiffs' second claim for relief is also not ripe because, in

sum, Plaintiffs failed to submit multiple proposals or variance applications. (Defs. Mem. of Law at 14) While the GEIS I moratorium did not have any exemption procedure in place, Defendants point to the exclusion from the moratorium of "any subdivisions for which a draft environmental impact statement has been accepted," and indicate that Plaintiffs failed to prepare such a statement. *Id.* at 16. Plaintiffs counter, however, that a natural reading of the language of the 1989 moratorium ("has been accepted") results in the conclusion that only those subdivisions for which such a statement *already* existed and had been accepted prior to the adoption of the 1989 moratorium would be exempt from the moratorium; a so-called "grandfather" clause. (Pls. Mem. of Law at 29, n. 19) These conflicting positions raise genuine issues of material facts, militating against summary judgment. *See Curry*, 316 F.3d 324, 329 ("credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment").

### (ii) *Statute of Limitations*

Defendants' statute of limitations argument with respect to Plaintiffs' second claim for relief mirrors that of their argument with respect to the first claim for relief. Accordingly, Defendants are not entitled to summary judgment with respect to Plaintiffs' second claim under a statute of limitations argument.

### c. *Plaintiffs' Third and Fourth Claims: Temporary Taking Resulting from GEIS II and GEIS III Moratorium*

As an initial matter, Defendants attack Plaintiffs' fourth claim for relief as "border[ing] on the frivolous," since Local Law No. 1–1992 did nothing more than change the name of the GEIS law from Chapter 300 of the Town Code to Chapter 324, and as such cannot effect a taking of Plaintiffs' property. (Defs. Mem. of Law at 18) However, while there may be no substantive difference between the two laws, the period of time covered by the two laws differs. The Plaintiffs' third claim for relief covers the period of October 23, 1990 to February 10, 1992 (GEIS II, Chapter 300), while Plaintiffs' fourth claim for relief covers the period of February 11, 1992 to June 30, 1995 (GEIS III, Chapter 324). As a result, each claim for relief constitutes an allegation of a separate temporary taking. Though the analysis with respect to finding a taking for each period may ultimately be same, the claims do cover distinct periods of time. Therefore, this Court turns instead to the other arguments advanced by Defendants.

### (I) *Ripeness*

After Plaintiffs' 1993 petition for exemption from the GEIS study restrictions was denied ("1993 denial"), Plaintiffs failed to submit any further petitions for an exemption. Defendants argue that as a result of this failure, Plaintiffs' third and fourth claims for relief are not ripe. (Defs. Mem. of Law at 26) The 1993 denial was not a "final decision" under the first prong of *Williamson County* because "if a governing body has denied 'exceedingly grandiose development plans,' it is not certain that less ambitious plans will be denied as well." (Defs. Mem. of Law at 14–15) (citing *MacDonald, Sommer, and Frates v. County of Yolo*, 477 U.S. 340, 353, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986)) Plaintiffs, for their part, maintain that any further petitions for an exemption would have been "futile." (Pls. Mem. of Law at 33)

Supreme Court precedent indicates that the *Williamson County* final decision rule requires only "the landlord's first hav-

ing followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property." *Palazzolo v. Rhode Island*, 533 U.S. 606, 620–21, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001). So long as this requirement is fulfilled, "federal ripeness rules do not require the submission of further and futile applications." *Id.* at 626, 121 S.Ct. 2448. Thus, Plaintiffs' 1993 petition for exemption appears to satisfy this requirement, provided, indeed, that all "reasonable and necessary steps" were followed and that further applications would have been "futile." Whether additional petitions for exemption would or would not have been futile remains a disputed issue of fact, thereby foreclosing the possibility of summary judgment on this issue. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

### (ii) *Statute of Limitations*

Defendants' statute of limitations argument with respect to the third and fourth claims for relief mirrors that of their argument with respect to the first and second claims for relief. Accordingly, Defendants are not entitled to summary judgment with respect to Plaintiffs' third and fourth claims under a statute of limitations argument.

### d. *Plaintiffs' Fifth Claim: Temporary and Permanent Taking Resulting from Defendants' Combined Actions and Regulations*

Plaintiffs' fifth claim for relief is based upon the factual allegations which underlie the first four claims for relief and Defendants assert no new arguments in support of summary judgment. Accordingly, summary judgment is likewise denied with respect to the fifth claim for relief.

### 2. Defendants' Claims: Merits

Defendants put forth an additional argument in support of their motion for summary judgment, which challenges the collective merits of all of Plaintiffs' claims. Pursuant to *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002), Defendants argue that Plaintiffs' taking claims are without merit. (Defs. Mem. of Law at 20–21) In *Tahoe–Sierra*, the Supreme Court declined to apply a *per se* taking rule to temporary development moratoria even though the regulatory scheme before it did not contain any procedure for obtaining relief from the moratorium while a study was being conducted. *Id.* The Supreme Court stated that "fairness and justice" would not be better served by a categorical rule that any deprivation of all economic use, no matter how brief, constitutes a compensable taking. *Tahoe–Sierra*, 535 U.S. at 333–336, 122 S.Ct. 1465. Therefore, the Defendants allege, the Plaintiffs cannot have a categorical, *per se* takings claim under *Tahoe–Sierra*.

■ Plaintiffs argue however, and rightfully so, that there are various other theories, apart from a *per se* taking rule, under which moratoria can be analyzed for the purposes of a takings claim. Several of these theories are advanced in the instant action and appear to be applicable. For the purposes of the instant summary judgment motion, this Court will only address the following two federal takings theories advanced by Plaintiffs: (1) the moratoria were imposed in "bad faith," and (2) "the moratoria did not substantially advance a legitimate state interest." (Pls. Mem. of Law at 7–8) (citing *Tahoe–Sierra*, 535 U.S. at 333–4, 122 S.Ct. 1465). Under each of these taking theories, genuine issues of material fact exist sufficient to defeat summary judgment. Though far from an ex-

haustive review of these theories, key factual disputes are highlighted:

### a.   Moratoria Imposed in Bad Faith

Plaintiffs have provided evidence, both circumstantial and direct, to support their position that Defendants' actions—the administrative "hold," the successive moratoria, and the 1993 denial—indicate that they sought to freeze or lower the acquisition price of Plaintiffs' land. Specifically, Plaintiffs offer evidence in the form of direct testimony of a Town Board member alleging that the Plaintiffs' exemption application was denied in order to provide the Town with "a little bit more time" to gather the funds necessary to acquire Plaintiffs' property. (Pls. Supp. 56.1 Stmt., at ¶ 48[a]) Additionally, Plaintiffs note that the March 5, 1987 "hold" occurred just two weeks after Suffolk County announced that it was placing Plaintiffs' property on its list of priority acquisitions. (Pls. Supp. 56.1 Stmt., at ¶¶ 36–44)

■   Such conduct, if true, not only raises questions of impropriety, but may also support a "bad faith" taking claim.  *See Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999) (cited in *Tahoe–Sierra* as an example of a "bad faith" takings case wherein evidence at trial demonstrated that a town had prohibited development of plaintiff's land so that the town might more easily acquire that land).  Indeed, it has long been acknowledged that regulation for the sole purpose of depressing the value of property that a town or municipality seeks to acquire is a taking.  *See e.g. Wital Corp. v. Township of Denville,* 93 N.J.Super. 107, 225 A.2d 139, 140–41 (1966) (court inquires into whether legislative purpose was to depress value of property prior to acquisition where thirteen days after an unsuccessful meeting between officials and property owner to negotiate purchase price of proposed school site, township substantially downzoned the designated parcel); *American Sav. & Loan Ass'n v. County of Marin,* 653 F.2d 364, 373 n. 2 (9th Cir.1981) (Merril, J., concurring and dissenting); *Washington Metro. Area Transit Auth. v. One Parcel of Land,* 413 F.Supp. 102, 106–7 (D.Md. 1976), *aff'd,* 548 F.2d 1130 (4th Cir.1977); *Carl M. Freeman Assocs., Inc. v. State Roads Comm'n,* 252 Md. 319, 329, 250 A.2d 250, 255 (1969).

Analogous to the problem at hand are the many cases (in a number of which the undersigned directly and successfully participated) involving the "condemnation blight" principle which was established and sustained in the City of New York in the seventies.  In these cases, the Mayor or his office would make a public pronouncement of the City's plan to renew a deteriorated or slum area, then wait for a number of months for all business and other interests to vacate the area and thereafter file condemnation papers claiming the latter date to be the effective one, with greatly reduced values as the fair value of the property.  Virtually without exception, the New York Courts adopted the rule that the valuation date should be the pronouncement date, not the date when condemnation papers were filed.

The same principle should be applied here.  Accordingly, Defendants' alleged suspect conduct and the timing of certain actions may support a "bad faith" taking theory and, therefore, summary judgment is unavailable.  *See Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. 2505.

### b.   Moratoria Did Not Substantially Advance a Legitimate State Interest

It has long been accepted that a taking has occurred "when land-use regulation 'does not substantially advance legitimate

state interests.'" *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1016, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (quoting *Agins v. Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980)). Here, Defendants' administrative hold and subsequent moratoria were ostensibly for the purpose of "review[ing] new environmental concerns," including the possibility that there were harrier hawks nesting in Plaintiffs' property and the presence of dwarf pine plains on their property. (Pls. Supp. 56.1 Stmt., ¶ 16) (citing Thorsen Dep., p. 63, and the Joint Record on Appeal before the New York State Supreme Court, Appellate Division at 5343)

Plaintiffs argue, however, that while Defendants advance these as their reasons for imposing the alleged administrative hold and successive moratoria, their actions during the eight years in question fail to support this position. Notably, according to Plaintiffs' 56.1 Statement, Defendants never verified the claim that harrier hawks were actually on Plaintiffs' property and the presence of dwarf pines may have been known prior to March 1987 resolution. (*Id.* at ¶¶ 16–17) Plaintiffs also raise as an issue the possibility that neither environmental concerns required such lengthy, successive moratoria. *Id.*

Thus, while Defendants' purported environmental concerns appear to advance a legitimate State interest, Plaintiffs raise questions as to whether such concerns were pretextual. Consequently, this argument cannot be dismissed on summary judgment as Plaintiffs have once again raised genuine issues of material fact. *See e.g. Del Monte Dunes,* 526 U.S. at 700, 119 S.Ct. 1624 (upholding damages when certain evidence submitted at trial served "to undermine the validity of the asserted factual premise for the city's denial of [the plaintiff's development] proposal" and to show instead that the denial was intended to facilitate an acquisition of plaintiff's property).

## *CONCLUSION*

For the foregoing reasons, Defendants' motion for summary judgment is hereby **DENIED.**

SO ORDERED.