COUNTRY VIEW ESTATES @ RIDGE LLC, Plaintiff,

v.

TOWN OF BROOKHAVEN; Building Department of the Town of Brookhaven; Daniel Gulizio Individually and as commissioner of the Department of Planning, Environment and Development of the Town of Brookhaven; Department of Planning, Environment and Development, of the Town of Brookhaven; Robert T. Reilly, Chairman; Karen M. Wilutis; Robert L. Hughes; Donald W. Leo; Peter Cris; Stephen E. Keegan; M. Cecile Forte, constituting the Planning Board of the Town of Brookhaven; New York State Builders Association, Defendants.

No. CV–04–4901(BMC)(MLO).

United States District Court, E.D. New York.

Sept. 25, 2006.

Richard I. Scheyer, Scheyer & Jellenik, Nesconset, NY, for Plaintiff.

Paul F. Millus, Snitow, Kanfer, Holtzer & Millus, LLP, New York, NY, Kimberely C. Lawrence, Hinman Straub, P.C., Albany, NY, for Defendants.

### ORDER ADOPTING REPORT AND RECOMMENDATION AND DISMISSING COMPLAINT

COGAN, District Judge.

Plaintiff Country View Estates @ Ridge LLC sues the Town of Brookhaven and other defendants for (1) deprivation of its procedural and substantive due process rights pursuant to the Fourteenth Amendment; (2) violation of its right to equal protection pursuant to the Fourteenth Amendment; (3) violation of its civil rights pursuant to 42 U.S.C. § 1983; (4) violation of its civil rights pursuant to 42 U.S.C. § 1988; (5) violation of its Fifth Amendment right to be free from a regulatory taking of property without just compensation; and (6) violation of some unspecified laws of the State of New York.

On May 4, 2005, District Judge John Gleeson (previously assigned to this case) referred defendants' motions for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) to Magistrate Judge Michael L. Orenstein. Judge Orenstein issued his Report and Recommendation finding that plaintiff's claims are not yet ripe for consideration by this Court and recommending that this court either grant defendants' motion for judgment on the pleadings without prejudice and with leave to replead at such time as the claims do become ripe or hold the case in abeyance pending the final adjudication of the proceedings in state court. Despite being granted an extension of time *nunc pro tunc* in which to file its objections, plaintiff has not filed any objections to the Report and Recommendation. Nonetheless, I have reviewed the parties' submissions on the motion together with Judge Orenstein's Report and Recommendation.

I agree with and accept the Report and Recommendation. Judge Orenstein is clearly correct that the case is not ripe for adjudication at this time. With regard to the alternative ruling of staying this case pending the outcome of the Article 78 proceeding suggested by Judge Orenstein, I believe that dismissal rather than a stay is appropriate.

Ripeness goes to the existence of a case or controversy under the Constitution and thus presents a jurisdictional issue. *Metropolitan Washington Airports Authority, et al. v. Citizens for the Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 265 n. 13, 111 S.Ct. 2298, 115 L.Ed.2d 236 (1991). If the case is not ripe, there is no subject matter jurisdiction, and thus no basis to issue a stay. Dismissal without prejudice is therefore the proper disposition in the ripeness context.[1]

It is therefore

ORDERED that plaintiff's complaint is dismissed in its entirety without prejudice.

**SO ORDERED.**

### *REPORT AND RECOMMENDATION*

ORENSTEIN, United States Magistrate Judge.

On May 4, 2005, District Judge John Gleeson referred to the undersigned, defendants' future motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) dismissing plaintiff Country View Estates @ Ridge, LLC's ("plaintiff" or "Country View Estates") complaint with prejudice and granting such other and further relief as the Court deems just and proper. *Order*, dated May 4, 2005, Gleeson, D.J. The parties filed their motion papers and memoranda of law, including an amicus memorandum of law in January 2006. Additional matter was filed in June 2006.

For the reasons that follow, this Court respectfully reports and recommends that (i) the Court grant defendants' motion for judgment on the pleadings without prejudice and with leave to replead at such time when plaintiff is able to allege sufficient facts that would satisfy the requirements of the *Williamson* ripeness test, and (ii) the Court decline to exercise jurisdiction over plaintiff's state law claims. In the alternative, this Court respectfully reports

---

1. Even if this case was ripe, it seems doubtful that plaintiff can assert a constitutionally protected property interest under the Second Circuit's recent decision in *Clubside, Inc. v. Valentin, et al.*, 463 F.3d 199 (2d Cir.2006). Under the applicable law, New York State Town Law § 274–a and § 85–45 of Article VI of the Brookhaven Town Code, the Town retains discretion to deny approval of plaintiff's development plan. *Clubside* makes it clear that even an Article 78 judgment finding that a town acted arbitrarily does not create a property interest for constitutional purposes.

and recommends that the Court hold the case in abeyance pending the final adjudication of proceedings in the state court with a view to avoid duplication of judicial resources and to have the benefit of the state court's decisions.

## FACTUAL BACKGROUND

The following summary of facts is based upon the Complaint. *See Nicholas v. Goord*, 430 F.3d 652, 658 (2d Cir.2005).

Plaintiff is the owner of a 10.7 acre parcel of property located at the intersection of Middle County Road and Wading River Hollow Road in the Town of Brookhaven (hereinafter the "property" or "parcel" or "site"). (Compl.¶ 11). On January 11, 2000, plaintiff applied to the Brookhaven Town Board to change the zoning on the property from "J–2 Business and A–1 Residential" to "MF–1 Multi Family,"[1] in order to construct its proposed project which consisted of 66 two-story, residential attached housing units on the subject site (hereinafter the "project"). (*Id.* at ¶ 13).

The Town Planning Board held a hearing on plaintiff's application on May 10, 2001 and conditionally approved plaintiff's change of zoning application to permit the building of 37 residential attached housing units. (*Id.* at ¶¶ 16–17). Plaintiff thereafter reapplied to the Town Planning Board to increase the number of housing units, and on December 12, 2001 the Town Board amended its approval of plaintiff's application for the change of zone classification to permit the construction of 42 units. (*Id.* at ¶¶ 18–19). The approved zoning change was to be effective on June 3, 2002. (*Id.* at ¶ 21). Plaintiff submitted a site plan application to the Planning Board on December 18, 2002. (*Id.* at ¶ 24).

Following a meeting with Commissioner Gulizio, plaintiff resubmitted its site plan application to the Town Planning Board on February 3, 2003. (*Id.* at ¶¶ 27–28). From February 2003 to April 2003, plaintiff communicated with officials in the Town's various departments regarding plaintiff's pending site plan application. (*Id.* at ¶¶ 29–31). In May 2003, the Town Planning Board notified plaintiff that it was awaiting comments from other Town Departments before the project could commence, and in June 2003 the Town's engineer had test holes performed on the subject property. (*Id.* at ¶¶ 32–33). Plaintiff subsequently met with representatives of the Town Planning Board in July 2003 to review the site plan application and to obtain the Planning Board's written comments. (*Id.* at ¶ 34). While plaintiff made a written list of the Planning Board's comments regarding its application, the Planning Board did not issue its comments in writing to plaintiff. (*Id.* at ¶ 35).

On July 8, 2003, the Town imposed a six month moratorium on, *inter alia*, MF–1 applications for properties located in Coram, Middle Island and Ridge, New York, which has remained in effect through continuous renewals.[2] (*Id.* at ¶¶ 36–37). The moratorium included plaintiff's application. (*Id.* at ¶ 38). Plaintiff applied for a hardship exemption from the moratorium in August 2003. (*Id.* at ¶ 39). Sometime between August 6, 2003 and August 11, 2003, the Town Board voted to exempt from the moratorium, change of zone applications which were effective within the prior two years of the moratorium, which included plaintiff's site plan application. (*Id.* at ¶¶ 40–41).

---

**1.** An MF–1 zoning category permits multi-family or apartment type use. (Compl.¶ 12).

**2.** As of the date of the filing of plaintiff's complaint, the moratorium was still in effect. (Compl.¶ 37).

Following additional meetings with the Town Planning Department, plaintiff revised and resubmitted its site plans based on the Planning Department's comments in September 2003. (*Id.* at ¶¶ 42–44). The Planning Board held a public hearing on November 3, 2003, and at this meeting, Commissioner Gulizio advised the Planning Board that Section 85–79 of the Town Code[3] provided that construction on a project must be commenced within one year from the effective date of a change of zone. (*Id.* at ¶ 46). Commissioner Gulizio also stated that because plaintiff's project had not commenced in accordance with an approved site plan within a one year period, the Town Planning Board was without authority to act on plaintiff's application. (*Id.* at ¶¶ 47–49). Commissioner Gulizio advised plaintiff that pursuant to Section 85–79 the Town Planning Board may, if deemed necessary, initiate proceedings to reclassify plaintiff's property to its original zoning and informed plaintiff that it would have to apply to the Town Board for an extension of the time limit for commencement of construction under this section. (*Id.* at ¶¶ 52–53).

By letters dated November 6, 2003 and November 19, 2003, plaintiff notified the Town of its objections to Commissioner Gulizio's statements at the hearing. (*Id.* at ¶¶ 54–55). While the Town Board did not directly respond to plaintiff's letters of objection, the Town informed plaintiff by letter dated January 14, 2004, that the Planning Board would review plaintiff's site plan application under Section 85–79.

(*Id.* at ¶¶ 55–56). Plaintiff submitted documents in support of the review and sent follow up letters to the Planning Board. (*Id.* at ¶¶ 57–58). By letter dated March 16, 2004 to the Town Planning Board, plaintiff requested final site plan approval, and the Planning Board placed the matter on its calendar for a public hearing scheduled for April 19, 2004. (*Id.* at ¶¶ 59–60). Prior to the hearing, the Planning Board notified plaintiff that the hearing would not be held on that day. (*Id.* at ¶ 61).

Plaintiff then met with Commissioner Gulizio and was informed that plaintiff's site plan application would be placed on the Planning Board's May 2004 calendar. (*Id.* at ¶ 62). Plaintiff sent follow up letters attempting to confirm the May hearing date, but the Planning Board did not respond nor did the Planning Board hold this hearing. (*Id.* at ¶¶ 63–64). As of the commencement of the instant action, the Planning Board has not scheduled a hearing on plaintiff's application. (*Id.* at ¶ 64).

On June 16, 2004, plaintiff commenced a proceeding in New York State Supreme Court, Suffolk County pursuant to Article 78 of the New York Civil Practice Law and Rules in the nature of *mandamus* seeking an Order to direct the Planning Board to place plaintiff's application back on its calendar for final approval and for an Order to direct that the proposed MF–1 zoning classification amendment would not apply to plaintiff's project. (*Id.* at ¶ 84). Defendants moved to dismiss the petition in the state court proceeding. (*Id.* at ¶ 86). By Order dated April 12, 2006, the Supreme

---

**3.** Section 85–79 of the Town Code provides, in pertinent part:

A building permit shall be secured and construction begun ... within one year from the effective date of the amendment establishing such zone. Application may be made to the Town Board for not more than a one-year extension of the time limit for commencement of construction. In the event that the construction is not started within the specified time limits, the Planning Board shall review the zoning and the progress which has taken place and, if deemed necessary, initiate proceedings to reclassify the property in a manner consistent with the Zoning Map.

*Hershkovitz Decl.*, dated August 29, 2005, Exh. C.

Court (Justice Peter Fox Cohalan): (1) denied defendants' motion to dismiss the petition with respect to defendants' request for a judgment of mandamus directing the Town Board to restore plaintiff's application to its hearing calendar; (2) denied defendants' motion to dismiss the petition on documentary evidence grounds; and (3) granted defendants' motion to dismiss the petition in all other respects. *See In the Matter of the Application of Country View Properties,* Index No. 04–12681 (N.Y. Sup.Ct., Suffolk County Apr. 12, 2006).

On July 13, 2004, the Town scheduled a public hearing to consider an amendment to the MF–1 zone. (*Id.* at ¶ 78). Because plaintiff's project had not received final site approval, the proposed amendment would apply to plaintiff's project and would limit the number of units plaintiff could construct to 21. (*Id.* at ¶ 81). According to plaintiff, the proposed amendment would render plaintiff's project economically unfeasible. (*Id.* at ¶ 82).

On November 12, 2004, plaintiff commenced the instant action in the United States District Court for the Eastern District of New York, alleging five causes of action. First, plaintiff alleges that defendants' actions in failing to timely act on its site plan application, in failing to notify plaintiff of the requirements under Section 85–79 of the Town Code and in arbitrarily enforcing Section 85–79 for the purpose of impeding plaintiff's construction project deprived plaintiff of its interest in the commercial development of its property in violation of plaintiff's substantive and procedural due process rights pursuant to the Fourteenth Amendment of the United States Constitution. (Compl.¶¶ 87–115). Second, plaintiff alleges that defendants' actions in selectively enforcing Section 85–79 of the Town Code for the purpose of

subjecting plaintiff's site to a more restrictive amendment of the MF–1 zoning classification violated plaintiff's right to equal protection pursuant to the Fourteenth Amendment of the United States Constitution. (Compl.¶¶ 116–131). Third, plaintiff alleges that defendants' actions in attempting to change the zoning on the subject site and prohibit plaintiff's project violated its civil rights pursuant to 42 U.S.C. § 1983. (Compl.¶¶ 132–145). Fourth, plaintiff alleges that defendants' actions in denying plaintiff all but a residual economic benefit for its property constituted a regulatory taking of the property without just compensation in violation of the Fifth Amendment to the United States Constitution. (Compl.¶¶ 146–160). Fifth, plaintiff alleges that defendants' actions and omissions violated the laws of New York State and plaintiff's rights under 42 U.S.C. § 1988. (Compl.¶¶ 161–168). *See Pl. Mem. of Law in Opposition to Defs. Motion for Judgment on the Pleadings,* dated October 24, 2005.

Defendants now move for judgment on the pleadings and to dismiss the complaint pursuant to Fed.R.Civ.P. 12( c). Defendants assert that (1) plaintiff's claims are not ripe for review; (2) plaintiff was not deprived of a constitutionally protected property interest; (3) plaintiff fails to state an equal protection claim; and (4) plaintiff's claims against Commissioner Gulizio in his individual capacity should be dismissed on the ground that he is entitled to qualified immunity. *See Defs. Mem. of Law and Reply Mem. of Law In Support of Motion for Judgment on the Pleadings,* dated August 29, 2005 and January 31, 2006, respectively.

The New York State Builders Association have submitted a brief as *amicus curiae*[4] urging the Court to consider the

---

**4.** This Court granted the New York State          Builders Association motion for leave to file a

public policy implications of this case affecting the home building industry and housing market in the state of New York. *See Brief of Amicus Curiae New York State Builders Association,* dated January 16, 2006.

## DISCUSSION

In considering a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), the Court evaluates the motion "under the same standard as a Rule 12(b)(6) motion to dismiss." *Nicholas v. Goord,* 430 F.3d 652, 658 (2d Cir.2005). Therefore, "a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Farbstein v. Hicksville Public Library,* 2006 WL 288251, at *2 (E.D.N.Y. Feb.6, 2006) (citing *Hayden v. County of Nassau,* 180 F.3d 42, 54 (2d Cir.1999)). On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court accepts as true the material facts alleged in the complaint and construes all reasonable inferences in favor of the plaintiff. *See Grandon v. Merrill Lynch & Co.,* 147 F.3d 184, 188 (2d Cir.1998).

The Court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient. *See Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985); *World Wrestling Federation Entertainment, Inc. v. Bozell,* 142 F.Supp.2d 514, 534 (S.D.N.Y. 2001). The Court should dismiss the complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 811, 113 S.Ct.

2891, 125 L.Ed.2d 612 (1993) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)); *see Zerilli–Edelglass v. N.Y. City Transit Auth.,* 333 F.3d 74, 79 (2d Cir.2003). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 240 (2d Cir.2002) (internal quotation marks and citation omitted).

### (1) Ripeness

Under Article III of the Constitution, "courts have long recognized that the controversy, as an initial matter, must be ripe." *Kittay v. Giuliani,* 112 F.Supp.2d 342 (S.D.N.Y.2000). "In the area of land use, the doctrine of ripeness is intended to avoid premature adjudication of administrative action." *Sunrise Development, Inc. v. Town of Huntington,* 62 F.Supp.2d 762, 770 (E.D.N.Y.1999) (internal quotation marks and citation omitted); *see Woodfield Equities, LLC v. The Incorporated Village of Patchogue,* 357 F.Supp.2d 622, 632 (E.D.N.Y.) ("The ripeness doctrine's basic rationale is to prevent the courts through avoidance of premature adjudication from entangling themselves in abstract disagreements.") (internal quotation marks and citation omitted), *aff'd* 156 Fed.Appx. 389 (2d Cir.2005).

In *Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* the Supreme Court established a two pronged test for courts to consider in assessing the ripeness of a Fifth Amendment regulatory taking of a property interest claim. 473 U.S. 172, 186, 194–95, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). The first prong requires a finding that the state regulatory

memorandum of law *amicus curiae* on December 5, 2005. *Order,* dated December 5,

2005, Orenstein, M., M.J.

"entity charged with implementing the regulations has reached a final decision." *Id.* at 186, 193–94, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126. The second prong requires a finding that plaintiff has sought just compensation by means of "reasonable, certain and adequate" state procedures. *Id.* at 194–95, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126. *See W.J.F. Realty Corp. v. The Town of Southampton,* 351 F.Supp.2d 18, 21–22 (E.D.N.Y.2004). "The ripeness requirement of *Williamson,* although announced in a takings context, has been extended to equal protection and due process claims asserted in the context of land use challenges." *Dougherty v. Town of North Hempstead Board of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir.2002); *see Murphy v. New Milford Zoning Com'n,* 402 F.3d 342, 349 (2d Cir.2005) (observing *Williamson*'s ripeness requirement has been extended to equal protection and due process challenges to zoning decisions); *Southview Assocs., Ltd. v. Bongartz,* 980 F.2d 84, 96–97 (2d Cir.1992) (applying ripeness requirement to substantive due process claims); *see also Kittay,* 112 F.Supp.2d at 349 & n. 5.

Inasmuch as plaintiff's takings, due process and equal protection claims, (*see* Compl., First, Second and Fourth Claims for Relief), arise out of the same factual events, namely defendants' alleged actions in failing to act on plaintiff's site application, including defendants' alleged failure to notify plaintiff of Section 85–79 of the Town Code and defendants' alleged selective enforcement of this Section, the Court will apply the same ripeness inquiry to plaintiff's takings, due process and equal protection claims. *See Dougherty,* 282 F.3d at 88–89, 92 n. 7; *Goldfine v. Kelly,* 80 F.Supp.2d 153, 158–59 (S.D.N.Y.2000); *Kittay,* 112 F.Supp.2d at 349 & n. 5.

**(a) Final Decision Requirement**

A "final decision" is a "definitive position on the issue that inflicts an actual, concrete injury." *Williamson,* 473 U.S. at 193, 105 S.Ct. 3108, 87 L.Ed.2d 126; *see San Remo Hotel, L.P. v. City and County of San Francisco, Cal.,* 545 U.S. 323, 125 S.Ct. 2491, 2506, 162 L.Ed.2d 315 (2005) (holding "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue") (internal quotation marks and citation omitted). For example, "[i]n order to have a final decision, a development plan must be submitted, considered and rejected by the governmental entity. Even when the plaintiff applies for approval of a subdivision plan and is rejected, a claim is not ripe until plaintiff also seeks variances that would allow it to develop the property." *Goldfine,* 80 F.Supp.2d at 159 (internal quotation marks and citations omitted).

"The rationale behind the finality requirement is that a court cannot determine whether a Plaintiff has been deprived of property arbitrarily or otherwise, until it has a final definitive position before it on how the administrative agency will apply the regulation at issue to the particular land in question." *R–Goshen LLC v. Village of Goshen,* 289 F.Supp.2d 441, 448 (S.D.N.Y.2003), *aff'd sub nom, R–Goshen LLC v. Andrews,* 115 Fed.Appx. 465 (2d Cir.2004); *see also Williamson,* 473 U.S. at 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (explaining that until a final decision is reached "it is impossible to tell whether the land retains any reasonable beneficial use"). In *Murphy,* 402 F.3d at 348, the Second Circuit set forth the principal purposes of the final decision requirements:

1) it helps the court develop a full factual record on the nature of the dispute;

2) it prevents ambiguity as to how the

land use board will apply the regulations to the property at issue; 3) it enables aggrieved parties to obtain relief without the federal court ruling on constitutional grounds; and 4) it respects the concern under federalism that land use disputes are uniquely matters of local concern whose resolution should be left in the hands of local officials whenever appropriate.

*Mastej v. Bolduc*, 2006 WL 1867712, at *2 (D.Conn. July 5, 2006) (internal quotation marks and citation omitted); *see Murphy*, 402 F.3d at 348.

In the case at hand, plaintiff acknowledges that the Town Planning Board has not yet issued a final decision on plaintiff's site plan application. In the absence of a final municipal determination regarding plaintiff's application, however, the Court's assessment of plaintiff's injury caused by defendants' alleged constitutional violations is speculative for Article III purposes. Notwithstanding, plaintiff raises three principal arguments in support of its contention that its claims must be permitted to proceed in this forum because defendants' extraordinary delays and intentional conduct have rendered any further efforts to obtain a final decision on plaintiff's site plan application futile.

The Second Circuit has acknowledged a "futility exception" to the "final decision requirement," *Southview Assocs.*, 980 F.2d at 98, however, the Court "has yet to determine what the precise contours of the futility exception are," *RKO Delaware, Inc. v. The City of New York*, 2001 WL 1329060, at *4 (E.D.N.Y. Aug.30, 2001). In *RKO*, the court observed:

[o]ther circuits have adopted a narrow interpretation of the exception. The First Circuit stated that "a sort of inevitability is required; the prospect of refusal must be certain." *Goldfine v. Kelly*, 80 F.Supp.2d 153, 159 (S.D.N.Y.2000) (quoting *Gilbert v. City of Cambridge*, 932 F.2d 51, 61 (1st Cir.1991)). The Ninth Circuit has held that "mere allegations by a property owner that it has done everything possible to obtain acceptance of a development proposal will not suffice to prove futility." *Id.* (quoting *Herrington v. County of Sonoma*, 857 F.2d 567, 570 (9th Cir.1988)). A plaintiff can successfully invoke the futility exception where it filed at least one "meaningful application." *See id.* (quoting *Gilbert*, 932 F.2d at 61 and *Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1454–55 (9th Cir.1987)). Other factors considered by courts in applying the exception are the defendant's hostility, delay and obstruction. *See id.* at 160. However, since in *Williamson* the claim was not found ripe despite an eight-year application process, "an excessive delay would have to be considerable." *Id.* at 161 (quoting *Kinzli*, 818 F.2d at 1454 n. 5).

2001 WL 1329060, at *4; *see also Dix v. City of New York*, 2002 WL 31175251, at *6–7 (S.D.N.Y. Sept.30, 2002) (same); *Kittay*, 112 F.Supp.2d at 349–50 (same); *Goldfine*, 80 F.Supp.2d at 159 (same).

While the ripeness doctrine does not require litigants to engage in futile gestures such as "to jump through a series of hoops, the last of which is certain to find obstructed by a brick wall, ..." the presence of that brick wall must be all but certain for the futility exception to apply. There must be evidence that the relevant government body has no discretion to grant an exemption, or that it "has dug in its heels and made clear that all such applications will be denied." *Ecogen, LLC v. Town of Italy*, 438 F.Supp.2d 149, 161 (W.D.N.Y. 2006) (internal quotation marks and citations omitted).

In support of its contention that the finality requirement has been satisfied because any further efforts by plaintiff would

be futile, plaintiff first argues that "the defendants have aggressively raised a barrier which has the effect of prohibiting plaintiff from compliance with the Town's requirements." Specifically, plaintiff maintains that compliance with the durational requirement of Section 85–79 of the Town Code that construction on the project be commenced within one year from the effective date of the amendment establishing the zoning classification as MF-lis an "impossibility." Plaintiff's argument is unpersuasive.

The record shows that on May 10, 2001, the Town Planning Board conditionally approved plaintiff's change of zoning application to permit the building of 37 residential attached housing units, and on December 12, 2001 upon plaintiff's reapplication, the Town Board amended its approval of plaintiff's application for the change of zone classification to permit the construction of 42 units. The new MF–1 zoning classification became effective on June 3, 2002. However, plaintiff did not submit its site plan application to the Planning Board until December 18, 2002, nearly six months after the new zone classification became effective and nearly a year after the Board approved the change of zone classification to permit the construction of 42 units. To the extent plaintiff could have submitted its site plan application in a more timely fashion to the Town Board, the Court finds it conceivable that the Town Board could have in turn approved plaintiff's application in such a time frame that plaintiff could have commenced construction within the one year durational limit. *See Ecogen, LLC,* 438 F.Supp.2d at 161.

Moreover, while Section 85–79 explicitly provides that an application could be made to the Town Board for an extension of the time limit for commencement of construction, plaintiff never submitted an application to the Town Board for an extension of the one year durational limit. Because plaintiff has not yet given the Town Board the opportunity to make a reasonable accommodation, the Court cannot infer that plaintiff made a "meaningful application" sufficient to invoke the futility exception. *Murphy,* 402 F.3d at 348 (Generally, ripeness requires that plaintiff to have made "at least one meaningful application for a variance" or other "exemption from the challenged regulation"); *see Ecogen, LLC,* 438 F.Supp.2d at 160; *see also Woodfield Equities, LLC,* 357 F.Supp.2d at 632 ("In our view, Congress did not intend the federal courts to act as zoning boards by deciding fact-intensive accommodation issues in the first instance").

Finally, even without having applied for an extension of time to commence construction, Section 85–79 authorizes the Planning Board to review the property's zoning classification and the progress which has taken place and only "if deemed necessary" initiate proceeding to reclassify the property. Thus, the Town Code grants the Board wide discretion to review the application. *Murphy,* 402 F.3d at 349 (holding a zoning board review of an application is futile only if it "lacks discretion to grant variances or has dug in its heels and made clear that such applications will be denied," of "sits purely as a remedial body") (internal quotation marks and citation omitted); *see Mastej v. Bolduc,* 2006 WL 1867712, at *2 (same). In such circumstances, it cannot be said that the Board's prospect or denial of plaintiff's site plans is certain. *See Ecogen, LLC,* 438 F.Supp.2d at 160–61; *Goldfine,* 80 F.Supp.2d at 159.

Plaintiff's second argument in support of its contention that any further efforts in support of its application would be futile focuses on plaintiff's allegation that "defendants failed to calendar plaintiff's application in both April and May of 2004;"

despite informing plaintiff that the Board would schedule a hearing and despite plaintiff having complied with defendants' requirements, in order to ensure that plaintiff could never proceed with its planned development.

According to the complaint, on December 18, 2002, plaintiff submitted its site application to the Planning Board, and following correspondence and meetings between plaintiff and the Planning Board, the Town Board scheduled a public hearing on November 3, 2003 to address plaintiff's application. At the meeting Commissioner Gulizio advised plaintiff that the Planning Board lacked authority to act on plaintiff's site plan application pursuant to Section 85–79 of the Town Code and that Plaintiff needed to obtain an extension of the durational requirement. Defendants nevertheless informed plaintiff by letter dated January 14, 2004 that the Planning Board would review plaintiff's application and would place the matter on the calendar for a public hearing on April 19, 2004. This hearing was cancelled, but Commissioner Gulizio advised plaintiff that its application would be placed on the Planning Board's May hearing. The hearing was neither held nor, as of the time of the commencement of this action, was ever rescheduled.

Significantly, plaintiff commenced an Article 78 proceeding on June 16, 2004 in New York State Supreme Court, Suffolk County in the nature of mandamus seeking, *inter alia*, an order directing the Town Board to restore plaintiff's application to its hearing calendar. Upon defendants' motion to dismiss the Article 78 petition, the Supreme Court denied the motion with respect to plaintiff's request for a judgment of mandamus directing the Town Planning Board to restore plaintiff's site plan application to its hearing calendar. *See In the Matter of the Application of Country View Properties,* Index No. 04–12681 (N.Y. Sup.Ct., Suffolk County Apr. 12, 2006). In particular, the Supreme Court held that plaintiff's allegations were

> sufficient pursuant to CPLR 3211[a][7] to establish that the petitioner may be entitled to a judgment of mandamus directing that the respondent Planning Board restore petitioner's site plan application to its public hearing calendar. This is the type of ministerial action contemplated by mandamus relief.... Further, the petitioner's allegations are sufficient to establish for purposes of this motion, that the respondents may have completed their review of zoning and 'the construction progress in connection therewith' (Section 85–87.4[A] of the Brookhaven Town Code). Accordingly, respondents' motion to dismiss the petition is denied as to this portion of the petition.

*Id.* at 9.

Although plaintiff claims that any further actions to restore plaintiff's application to the Town Board's calendar for a hearing would be futile, this Court finds that in light of the recent State Supreme Court decision the present action is premature. *See, e.g., Williamson,* 473 U.S. at 200, 105 S.Ct. 3108, 87 L.Ed.2d 126; *Southview Assocs.,* 980 F.2d at 98; *Goldfine,* 80 F.Supp.2d at 159; *Xikis v. City of New York,* 1990 WL 156155, at *4 (E.D.N.Y. Sept.28, 1990).

Plaintiff's final argument in support of its application to invoke the futility exception is based on allegations of defendants' malicious intent to obstruct and delay plaintiff's project. The gravamen of plaintiff's Complaint is that with specific malicious intent defendants: (i) delayed plaintiff's project "for the sole purpose of an anticipated zone change on its property ... [and] so that it could not obtain vested rights under its application,"

(Compl.¶¶ 79–80), (ii) applied Section 85–70 of the Town Code "so that zoning could be changed to prohibit the use for which plaintiff sought to use the subject site...," (Compl.¶ 118), and (iii) sought "to deprive it of site plan approval so that the zoning could be changed with far more restrictive conditions than had existed" and "to terminate plaintiff's project by applying a new code with covenants so restrictive that the subject site cannot be used," (Compl.¶¶ 121–22). Relying on *Sunrise Development*,[5] 62 F.Supp.2d at 762, plaintiff maintains that because defendants' intentional conduct and concomitant delays caused plaintiff to suffer actual, concrete injury, the court must invoke the futility exception since any further administrative action would be futile. Plaintiff's reliance on *Sunrise Development* is misplaced.

In contrast to the plaintiff in *Sunrise Development*, the record before the Court reflects that the Town Board has not taken final, definitive action that precludes approval over plaintiff's site plan application. Here, the Town of Brookhaven has not yet enacted a new zoning ordinance that would significantly change the standards and procedures governing plaintiff's application to obtain approval to build its project nor has the Town made clear that in the event of a proposed ordinance that it would not "grandfather" plaintiff's application under the old law. While plaintiff asserts in its Complaint that the Town is delaying its application so that a "new proposed MF–1 Zone ... would limit plaintiff to 21 multi-family units rather than the 42 units approved by the Town," (Compl.¶¶ 79–82), there is no indication that such new ordinance has been passed.

5. In *Sunrise Development*, a proposed builder of a congregate care facility ("CCF") sought a special use permit to build a CCF for seniors in the Town of Huntington. 62 F.Supp.2d at 766–67. At the time, upon compliance with certain requirements and the issuance of the special use permit, the Town Zoning Code permitted an applicant to build a CCF "as of right." *Id.* at 766. Sunrise Development submitted a fully conforming application that complied with the then-existing Zoning Code and special use permit requirements on February 9, 1998, but on the following day, February 10, 1998, the Town enacted a Local Law which significantly changed the standards and procedures governing an application to obtain approval to build a CCF. *Id.* at 768–70. Significantly, the new Local Law "grandfathered" only those special use permit applications that were pending and upon which a public hearing had been held, which did not include Sunrise Development's application. *Id.* Sunrise Development commenced an action against the Town, challenging the constitutionality of the Local Law and alleging violations of its equal protection and due process rights. *Id.*

The district court held that "[t]he Town Board by enacting the Local Law, effectively denied Sunrise's application for a special use permit, and significantly changed the standards and procedures governing Sunrise's attempt to obtain approval to build its CCF." "The Court found this decision to be final because the Town had made it clear that it would not willingly 'grandfather' Sunrise's application under the old law, and therefore, the Board had taken final, definitive action that prevented the issuance of a special use permit to Sunrise." *Id.* at 770–71. The court found that although Sunrise Development could begin the application process anew to seek a zoning change and ultimately obtain approval to build its CCF, such action by the Town would not eradicate the actual, concrete injuries plaintiff sustained because of the new Local Law, including "[a]ll the time, legal fees, and other expenses incurred in connection with the application for a special use permit" and the "significant additional delay and expense." *Id.* The court held:

> because the Town's enactment of the new Local Law is tantamount to a final denial of the special use permit that has caused actual, concrete injury to the plaintiffs, and because the plaintiffs are likely to suffer substantial hardship if judicial consideration of this controversy is withheld, the court finds the defendants' conduct at issue here to be ripe for adjudication.

*Id.* at 771.

Additionally, plaintiff alleges in its complaint that the "Town is proposing to change its Code to require any applications for extensions or exemptions from the requirement of the Town Code, Section 85–79, be made to the full Town Board," and that "this proposed change to the Code is being made so that the Town Board could impose additional conditions which could not be approved by the Planning Board." (Compl.¶¶ 106–07) (emphasis supplied). However, these allegations are merely speculative, as such proposals have not yet been enacted. Finally, the "new code" that plaintiff refers to in its allegation in the Complaint that defendants "sought to terminate plaintiff's project by applying a new code with covenants so restrictive that the subject site cannot be used" is not a new zoning ordinance but rather refers to the application of the then existing Section 85–79 of the Town Code. (Compl.¶¶ 120–22).

Moreover, unlike the finding in *Sunrise Development* that plaintiff suffered actual, concrete injuries that flowed from the alleged discriminatory conduct of defendants, the Complaint herein fails to set forth facts to support defendants' allegations of intentional misconduct and bad faith. Thus, plaintiff's conclusory assertions that defendants' acted with malicious intent and bad faith in processing plaintiff's application in order to delay and obstruct the construction of plaintiff's multifamily residential development project without more is insufficient to establish that the "prospect of refusal [of approval of the application] is certain and invoke the narrow futility exception." *Dix*, 2002 WL 311755251, at *8; *see Mastej*, 2006 WL 1867712, at *4 ("futility requires more than the bare assertion that a decision by a local inspector caused an unexpected delay"); *cf. Unique Medium, LLC v. Town of Perth*, 309 F.Supp.2d 338, 342 n. 2 (N.D.N.Y.2004) (holding "a plaintiff may

not meet the futility exception by relying upon the bare assertion that government officials are biased"); *Goldfine*, 80 F.Supp.2d at 161 (rejecting plaintiff's argument that defendants "were hostile to his development and conspired to prevent him from continuing the project" because the allegations were "insufficient to show that the prospect of refusal is certain and invoke the narrow futility exception") (internal quotation marks and citation omitted); *Tri–State Video Corp. v. Town of Stephentown*, 1998 WL 72331, at *4 (N.D.N.Y. Feb.13, 1998) (holding mere assertions of open hostility were insufficient to invoke the futility exception).

Further, unlike the proposed builder in *Sunrise Development*, with respect to plaintiff's allegations of obstruction and delay, the Court notes, as discussed *supra*, that plaintiff's own actions, in waiting nearly six months after the Town's change of zone approval became effective before submitting a site plan application and in later failing to seek an extension of the durational time limit pursuant to Section 85–79 of the Town Code, contributed to the delay in the approval process. Even if plaintiff submitted a meaningful application to the Town Board, plaintiff's failure to seek an extension of time to permit defendants the opportunity to make a reasonable accommodation precludes it from invoking the futility exception of the ripeness requirement. *See Dougherty*, 282 F.3d at 89 (finding that plaintiff's claims were not ripe because by not applying for a variance from the Board, plaintiff had not received a final decision under *Williamson*); *Southview Assocs.*, 980 F.2d at 96 (declining to apply futility exception requirement of a final decision where plaintiff submitted only one application for a land use permit); *see also Sterngass v. Town of Woodbury*, 433 F.Supp.2d 351, 356 (S.D.N.Y.2006) (dismissing Fifth

Amendment takings claim as unripe where plaintiff failed to apply for a variance or a change of zone to develop his property for multi-family housing); *Xikis,* 1990 WL 156155, at *4 (holding after a denial of an application for rezoning his property, plaintiff must seek a variance before the case is deemed ripe).

Finally, with regard to delay that passed from the time plaintiff submitted its initial site plan application on December 18, 2002, including the time of plaintiff's revised site plan applications and resubmissions on February 3, 2003 and on September 18, 2003 respectively, until plaintiff's determination that its application was futile, namely when it commenced the instant action on November 12, 2004, the Court finds that a delay of two years [6] "is insufficient to create futility, especially when considered in comparison to the eight-year delay [in the application process] in *Williamson* where the Supreme Court found the claim

was not ripe." *Goldfine,* 80 F.Supp.2d at 161 (holding claim not ripe despite a delay of the three years that passed between plaintiff's submission of a subdivision plan and the determination that the his application was futile); *see also Dougherty,* 282 F.3d at 89; *Dix,* 2002 WL 31175251, at *6–8.

██ Under such circumstances, plaintiff has failed to establish the applicability of the futility exception to its case. Inasmuch as the defendants have not made a final decision on plaintiff's application, plaintiff's case is premature and this Court "cannot determine whether plaintiff has been deprived of property, arbitrarily or otherwise." *Honess 52 Corp. v. Town of Fishkill,* 1 F.Supp.2d 294, 301 (S.D.N.Y. 1998); *see also Dougherty,* 282 F.3d at 90 ("The ripeness requirement prevents a federal court from entangling itself in abstract disagreements over the matters that are premature for review because the inju-

---

**6.** Plaintiff refers in its opposition papers to a "nearly five year period" for the Town to issue a final decision on plaintiff's application to develop its property. *Plaintiff's Mem. In Opp.,* at 4. In this action, however, plaintiff submitted two applications to the Town Board for approval, one of which was granted conditional approval and therefore its time period does not come within the Court's consideration of the futility exception to the final decision requirement. *See R–Goshen LLC v. Village of Goshen,* 289 F.Supp.2d at 449 ("Approval—even conditional approval—is the antithesis of denial. Plaintiff's takings claim must fail on this basis alone"). The initial application was to change the zone classification on the property from "J–2 Business and A–1 Residential" to "MF–1 Multi Family," which plaintiff submitted to the Town Board on January 11, 2001. With respect to that application, on May 10, 2001, the Town Board held a hearing and granted conditional approval of plaintiff's change of zone application to permit the building of 37 residential housing units. Upon plaintiff's reapplication to the Town Board for a change of zone classification to increase the number of housing units which it could construct, the Town

Board amended its approval of plaintiff's application on December 12, 2001 to permit the construction of 42 units, which was to be effective on June 3, 2002. Thus, the Planning Board never denied plaintiff's change of zoning classification claim and plaintiff cannot claim actual, concrete injury based on that decision. *See id.* ("a conditional approval cannot be interpreted as a decision that denies plaintiff the ability to use and derive economic benefit from the property"). Accordingly, the Court's consideration of the futility exception is limited to the events following the effective date of the approval of the zone change classification application.

Nevertheless, even assuming *arguendo* that there was a nearly five year delay period in plaintiff's application process, the Court still finds for the reasons set forth above that the delay is insufficient to invoke the futility exception. *See Dougherty,* 282 F.3d at 89 (notwithstanding 5½ year delay in obtaining board approval of plaintiff's planned construction project caused in large part by the zoning board's unjustified requirement, Court held plaintiff's claims under *Williamson* were not ripe).

ry is merely speculative and may never occur, depending on the final administrative resolution"). Accordingly, plaintiff's takings, due process and equal protection claims are not ripe for adjudication.

### (b) Denial of State Compensation Requirement

Nevertheless, *assuming arguendo,* that plaintiff could invoke the futility exception to the final decision requirement, plaintiff's takings, due process [7] and equal protection claims also fail under the second prong of the *Williamson* ripeness test because plaintiff has not alleged that it sought compensation from the relevant New York State authorities prior to asserting its regulatory takings claims.

"[If] a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson,* 473 U.S. at 195, 105 S.Ct. at 3121; *see San Remo Hotel,* 545 U.S. at 323, 125 S.Ct. at 2506; *New Holland Vill. Condominium v. Destaso Enters. Ltd.,* 139 F.Supp.2d 499, 504 (S.D.N.Y.2001) ("Thus, to withstand a motion to dismiss, an aggrieved plaintiff must allege not only a taking, but that compensation was sought via state procedures and denied"). Moreover, "[s]eeking a reasonable, certain and adequate provision for obtaining compensation ... is required with respect to due process, equal protec-

tion and taking claims." *Goldfine.* 80 F.Supp.2d at 161; *see Murphy,* 402 F.3d at 349; *Dougherty,* 282 F.3d at 88–89.

It is well-settled that New York State has a "reasonable, certain and adequate provision for obtaining compensation." *R–Goshen, LLC,* 289 F.Supp.2d at 449; *see RKO Delaware Inc.,* 2001 WL 1329060, at *5. The New York State Constitution states that "private property shall not be taken for public use without just compensation." N.Y. Const., art. I, § 7(a). Moreover, New York State law recognizes that compensation for a de facto taking may be demonstrated by a showing of "legal interference with the physical use, possession or enjoyment with the owner's power of disposition of the property." *City of Buffalo v. J.W. Clement Co.,* 28 N.Y.2d 241, 321 N.Y.S.2d 345, 357, 269 N.E.2d 895 (1971); *see RKO Delaware Inc.,* 2001 WL 1329060, at *5; *Goldfine,* 80 F.Supp.2d at 161.

Further, the New York State takings clause may also be violated by a local ordinance that "denies an owner economically viable use of his [or her or its] property or ... does not substantially advance legitimate State interests." *Manocherian v. Lenox Hill Hosp.,* 84 N.Y.2d 385, 618 N.Y.S.2d 857, 643 N.E.2d 479 (1994) (internal quotation marks and citations omitted). In *Manocherian,* the New York State Court of Appeals observed that, "[w]hile the typical taking occurs when the govern-

---

7. With respect to plaintiff's substantive due process claim based on its allegation that defendants acted arbitrarily and capriciously, plaintiff is not required to seek a state remedy. "The requirement that plaintiff seek compensation in state court is ... derived from the Takings Clause ... to which a substantive due process claim premised on arbitrary and capricious government conduct, is largely unrelated." *Southview Assocs.,* 980 F.2d at 95–96 (explaining that a plaintiff may allege two distinct substantive due process claims, namely an unconstitutional regulatory takings claim without just compensation and an arbitrary and capricious zoning board decision, and holding that the latter is subject only to the first prong of the *Williamson* ripeness test); *see also Gavlak v. Town of Somners,* 267 F.Supp.2d 214, 220 (D.Conn.2003); *Goldfine,* 80 F.Supp.2d at 161. In any event, as discussed *supra,* plaintiff's substantive due process claim is not ripe because it failed to satisfy the first prong of the *Williamson* ripeness test.

ment acts to physically intrude upon private property, government regulations which limit owners' rights to possess, use or dispose of property may also amount to a 'taking' of the affected property." *Id.*

In the case at hand, despite this "reasonable, certain and adequate" provision for obtaining compensation from the State, plaintiff has not alleged any efforts to seek compensation in the courts of New York for the alleged regulatory taking of its property. For this additional reason, the Court finds that plaintiff's takings, due process, equal protection and substantive due process claim based on a regulatory taking are not ripe for adjudication. *See Livant v. Clifton,* 334 F.Supp.2d 321, 326 (E.D.N.Y.2004) (holding plaintiff's failure to seek just compensation through New York State "remedies first prohibit[ed] his takings claim on the grounds of ripeness"); *see also Vandor Inc. v. Militello,* 301 F.3d 37 (2d Cir.2002) (dismissing on ripeness grounds a takings claim due to plaintiff's failure to first seek compensation via an Article 78 proceeding); *Allocco Recycling Ltd., v. Doherty,* 378 F.Supp.2d 348, 361 (S.D.N.Y.2005) ("New York does provide a means for obtaining compensation for regulatory takings that plaintiff must first pursue under *Williamson* ").

In summary, because plaintiff has not alleged facts sufficient to permit the Court to conclude that plaintiff satisfied the final decision prong of *Williamson* ripeness test and has not sought relief from the State pursuant to the second prong of the *Williamson* test or presented a proper claim of futility, this Court concludes that plaintiff's First, Second and Fourth claims for relief are not ripe for review. As such, the Court cannot exercise subject matter jurisdiction over these claims.

Accordingly, this Court respectfully reports and recommends that the Court grant defendants' motion for judgment on the pleadings with respect to these claims and dismiss the claims without prejudice. *See Vandor,* 301 F.3d at 38–39. In the alternative, this Court respectfully reports and recommends that the Court hold the case in abeyance pending the final adjudication of proceedings in the state court with a view to avoid duplication of judicial resources and to have the benefit of the state court's decisions.

### (2) Plaintiff's Remaining Claims

The allegations in Plaintiff's Third Claim for Relief and Fifth Claim for Relief appear to allege duplicative due process and equal protection causes of action based on the same factual events. Plaintiff asserts these claims pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 respectively and the laws of the State of New York.

Section 1983, however, "itself creates no substantive rights [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993); *see Morris-Hayes v. Board of Educ. of Chester Union Free School Dist.,* 423 F.3d 153, 159 (2d Cir.2005) ("It is well-settled that § 1983 does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere"); *Miller v. Alvarez,* 2005 WL 3560601, at *1 (E.D.N.Y. Dec.29, 2005). Additionally, Section 1988 "cannot form an independent basis for a cause of action." *D.A. Collins Const. Co. v. ICOS/NCCA, a Joint Venture,* 1994 WL 328626, at *11 (N.D.N.Y. June 28, 1994) ("Anyone who troubles to read it [Section 1988] must recognize it does not create any substantive rights to a cause of action, but rather deals with the procedure to be followed in civil rights actions over which jurisdiction is conferred by other statutory provisions"); *see Annunziato v. The Gan, Inc.,* 744 F.2d 244, 251 (2d Cir.1984) (Section

"1988 does not create an independent federal cause of action and is merely intended to complement the various acts which do create federal causes of action for the violation of federal civil rights").

Inasmuch as plaintiff's takings, due process and equal protection claims are not ripe for federal review, and plaintiff's § 1983 and § 1988 causes of action do not form an independent cause of action, this Court respectfully reports and recommends that the Court grant defendants' motion for judgment on the pleadings and dismiss plaintiff's claims under § 1983 and § 1988 without prejudice. In the alternative, this Court respectfully reports and recommends that the Court hold the case in abeyance pending the final adjudication of proceedings in the state court with a view to avoid duplication of judicial resources and to have the benefit of the state court's decisions.

Finally, with regard to plaintiff's claim that defendants violated the laws of New York State, the Complaint fails to allege any facts to support a violation under New York State law. The Complaint merely states that defendants "in committing the acts and omissions hereinabove alleged, violated the laws of the State of New York" and that "such violation of State law by the defendants constitutes a violation of plaintiff's constitutional rights under the Constitution of the United States. (Compl.¶¶ 162–63)." As such, these claims appear to be inextricably intertwined with plaintiff's federal causes of action.

Because plaintiff's State law claims appear to rely on the same factual events as the federal causes of action and involve interpretation of state law, under 28 U.S.C. § 1367(c)(3), the Court may wish to "decline to exercise supplemental jurisdiction over related state claims, where the district court has dismissed all claims over which it has original jurisdiction." *Cox v.*

*North Shore Univ. Hosp.,* 2006 WL 1720388, at *1 (E.D.N.Y. June 19, 2006) (internal quotation marks and citation omitted). " While § 1367(c)(3) does not require dismissal, in general, where the federal claims are dismissed before trial, the State claims should be dismissed as well." *Livant v. Clifton,* 334 F.Supp.2d 321, 327 (E.D.N.Y.2004) (internal quotation marks and citations omitted); *see Seabrook v. Jacobson,* 153 F.3d 70, 72 (2d Cir.1998) (observing that principles of federalism and comity may counsel in favor of the dismissal of state law claims where "the federal claim on which the state claim hangs has been dismissed"). Therefore, this Court respectfully reports and recommends that the Court decline to exercise supplemental jurisdiction over plaintiff's state law claims in this case and dismiss the claims without prejudice. In the alternative, this Court respectfully reports and recommends that the Court hold the case in abeyance pending the final adjudication of proceedings in the state court with a view to avoid duplication of judicial resources and to have the benefit of the state court's decisions.

## CONCLUSION

For the foregoing reasons, this Court respectfully reports and recommends that the Court grant defendants' motion for judgment on the pleadings without prejudice and that the Court decline to exercise jurisdiction over plaintiff's state law claims, dismissing the same. In the alternative, this Court respectfully reports and recommends that the Court hold the case in abeyance pending the final adjudication of proceedings in the state court with a view to avoid duplication of judicial resources and to have the benefit of the state court's decisions.

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within ten (10) days of the date of this Report. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir.1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir.1996); *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir.1993); *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir.1992).

Aug. 15, 2006.